UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKEY WHITE,

      Petitioner,                                Case No. 18-cv-13691
                                                     Hon. Matthew F. Leitman

v.

RANDEE REWERTS,

      Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF No. 1) AND (2) GRANTING A CERTIFICATE OF APPEALABILITY

Petitioner Rickey White is a state prisoner in the custody of the Michigan Department of Corrections. In 2012, White pleaded guilty to, and was convicted of, two counts of obtaining money by false pretenses with intent to defraud involving $1,000 or more but less than $20,000 in violation of Mich. Comp. Laws § 750.218(4) and one count of conducting a criminal enterprise in violation of Mich. Comp. Laws § 750.159i(1). The state trial court sentenced White as a habitual offender (fourth offense), *see* Mich. Comp. Laws § 769.12, to concurrent prison terms of 280 months to 40 years for the criminal-enterprise conviction and 3 months to 30 years each for the false-pretenses convictions.

White has now filed a petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1.) White seeks relief from his convictions on the ground that he

received ineffective assistance of counsel. (*See id*.)  For the reasons explained below, given the narrow scope of review under the Antiterrorism and Effective Death Penalty Act of 1996, codified at 28 U.S.C. § 2254(d) ("AEDPA"), the Court is constrained to **DENY** White's petition.   However, the Court will **GRANT** White a certificate of appealability.

## I

## A

In or around 2011, the Michigan Attorney General's Office (the "AG") began investigating White and his company, Braunstein & Associates ("BA"). *See People v. White*, 862 N.W.2d 1, 2 (Mich. App. 2014).  BA was a company that purported to help homeowners facing foreclosure on their mortgages by working with lenders to obtain favorable loan modifications. *See id*.  The AG came to believe that BA not a legitimate business but was, instead, a vehicle through which White defrauded unsuspecting homeowners.  More specifically, the AG concluded that White induced homeowners to pay an upfront fee by, among other things, falsely "promis[ing] a full money-back guarantee" and falsely "represent[ting] that there were attorneys on staff to review and assist in preparing loan modification proposals to banks." *Id*. The AG discovered that BA "employed no attorneys, and modification proposals were either incomplete or never submitted to the banks." *Id.*

2

After the AG concluded that White and BA had committed criminal acts (and before any charges were filed against White), the AG began negotiating a possible agreement with White's attorney, Harold Fried. (*See* Ltr. From Harold Fried, ECF No. 1-3.)  Those negotiations lasted "nearly a year." *White*, 862 N.W.2d at 2.  At the conclusion of the negotiations (and still before any charges were filed), the AG and White agreed that White "would pay $2,000 a week in restitution." *Id.*  "Pursuant to this agreement, [White] paid approximately $10,000 in restitution." *Id.*  However, "White then stopped making the required payments," and on July 13, 2012, the AG charged him and BA in the Oakland County Circuit Court. *Id.*  White was charged with "one count of operating a criminal enterprise and two counts of false pretenses involving $1,000 or more but less than $20,000." *Id.*

## B

On July 26, 2012, just thirteen days after the AG filed the charges against White and BA, White appeared in the Oakland County Circuit for a plea hearing.  But he was no longer represented by Harold Fried.  Instead, an attorney named Richard Morgan appeared on behalf of White and BA and substituted into the case as counsel for both. (*See* 7/26/2012 Tr. at 4, ECF No. 5-2, PageID.953.)  Morgan explained to the court that he had "just gotten involved in this case in the last day or so" (*id*. at PageID.956), but he did not ask for an adjournment in order to get himself up to speed with the facts and proceedings.

Morgan opened the plea hearing by asking the court to provide what is known as a "*Cobbs* evaluation." (*See id.* at 4-10, PageID.953-959.)  A *Cobbs* evaluation is a process that grew out of the Michigan Supreme Court's decision in *People v. Cobbs*, 505 N.W.2d 208 (1993).  That decision authorized trial judges "to participate in [pre-plea] sentencing discussions at the request of a party but not on the judge's own initiative." *White*, 862 N.W.2d at 5.  Under *Cobbs*, where a defendant requests a pre-plea sentencing assessment, the judge "may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." *Id.* (quoting *Cobbs*, 505 N.W.2d at 212). *Cobbs* further provides that "a defendant who pleads guilty or *nolo contendere* in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation." *Cobbs*, 505 N.W.2d at 212.

Morgan asked the court to adopt a *Cobbs* evaluation that had three components. First, the court would agree to sentence White at the low end of the sentencing guidelines range (which the parties had calculated as 78 months to 260 months). (7/26/2012 Tr. at 5, ECF No. 5-2, PageID.954.)  Second, the court would schedule White's sentencing hearing for a date no sooner than 60 days after White entered his plea in order to give White time to gather $20,000 in restitution. (*See id.* at 7-8, PageID.956-957.)  Finally, if White came up with $20,000 in restitution in 60

4

days, the court would delay the final sentencing for another eleven months in order to give White time to collect additional funds to be paid towards restitution. (*See id.*)

The AG objected to a sentence at the bottom of the guidelines but did not object to scheduling the sentencing hearing 60 days out. (*See id.* at 6-10, PageID.955-59.) The AG also told the court that White's wife also could have faced felony charges (apparently related to BA) but that the proposal Morgan described would "resolve those charges, at least at a misdemeanor level" (*Id.* at 9, PageID.958).

After hearing from counsel, the trial court offered the following *Cobbs* evaluation:

> I will make the following representation pursuant to *People v Cobbs*, if he were to plead today he would not be sentenced for a period in approximately 60 days. If, with -- at the time of sentencing he paid $20,000.00, then I would allow him to have a delayed sentence for another 90 days. If he pays another $20,000.00, then I'd continue it for the maximum of 11 months.
>
> And, assuming he meets all those conditions, any sentence would not exceed the bottom one-third of the guideline range. Bottom third of the guideline range is you'd take -- because of the way that these guidelines work because they're so high, is you take the high end of the guidelines, subtract the low end of the guidelines, take that difference, divide that by three, take that and add it back to the minimum. Okay? That's how it works.

(*Id.* at 11, PageID.960.)

The court then explained that if White came "up with a ton of money [in restitution] then I'll certainly consider that at sentencing." (*Id.* at 13, PageID.962.)

But the court added that if White failed to make one of the scheduled payments, then "we just go to immediate sentencing." (*Id.*)

C

After White heard the *Cobbs* evaluation, he decided to plead guilty, and the court proceeded to conduct a plea colloquy with White.  At the beginning of the colloquy, the court clerk placed White under oath. (*See id.*)

The court first asked White whether he "could hear and understand Morgan" and whether White was "satisfied with [Morgan's] advice." (*Id.* at 14, PageID.963.) White answered: "Yes." (*Id.*)

The court then explained its *Cobbs* evaluation in detail to White and asked if White understood it. (*See id.* 17-18, PageID.966-967.)  White indicated that he did understand the evaluation. (*See id.* at 18, PageID.967.)

The court next advised White of his constitutional rights and confirmed that White wished to waive those rights. (*See id.* at 19-21, PageID.968-970.)

The court then turned to the issue of whether White had been pressured to enter his plea and whether White's choice to plead guilty was his own:

> THE COURT: Has anyone threatened you or placed you under pressure to make you plead guilty, or promised you anything not disclosed pursuant to the answers already given?
>
> MR. WHITE:  No, your Honor.
>
> THE COURT:  Is it your own choice to plead guilty?

6

MR. WHITE:  Yes, Sir.

(*Id.*, PageID.970-971).   White then provided the following factual basis to support

his plea:

> MR. MORGAN: Mr. White, is it true that you held yourself out as a mortgage modification company?
>
> MR. WHITE:    Yes, sir.
>
> MR. MORGAN: And as a mod – as a mortgage modification company you indicated that you had lawyers on staff?
>
> MR. WHITE:  Yes.
>
> MR. MORGAN: That was untrue?
>
> MR. WHITE:   Yes, it was untrue.
>
> MR. MORGAN: Is it also true that you guaranteed the modification if, in fact, it didn't succeed you'd give money back?
>
> MR. WHITE:  Yes.
>
> MR. MORGAN: I hope that's satisfactory, Judge.
>
> THE COURT:  People, are you satisfied.
>
> MR. MORGAN: And I got one more.  And did – and did you do that with more than two people?
>
> MR. WHITE:  Yes, sir.
>
> MR. MORGAN: Thank you.
>
> THE COURT:  People?

MR. TETER:  Did you do a dollar amount?

MR. MORGAN: No, I didn't do a dollar amount.

MR. TETER:  Okay, we need a dollar amount.

THE COURT:  Do you want to voir dire, or?

MR. TETER: Sure.

Mr. White, is it true that on at least two of those occasions, one with Janice and Mark Leighty (ph) and also the second one with Penny Richards, that you took over a thousand dollars by false pretenses?  That was specifically with the intent to defraud each of those individuals on separate dates on separate counts?

MR. WHITE:  Yes.

MR. TETER: Both on behalf of yourself and on behalf of

the company?

MR. WHITE:  Yes.

MR. TETER: And that all of that took place in Oakland

County?

MR. WHITE:  Yes.

MR. TETER:  Between the dates of December, 2009 and

May, 2011?

MR. WHITE:  Yes.

THE COURT:  Both between yourself and the company?

MR. WHITE:  Yes.

THE COURT: Were – were the prospective clients of the company told that there were attorneys on staff to review the files to pre-qualify the homeowner for a mortgage loan modification to assist in preparing and presenting the modification proposal to the bank, but the company had no attorneys on staff and the modifications were either incomplete or never submitted, and that over 60 homeowners lost over a hundred thousand dollars pursuant to that criminal enterprise?

MR. WHITE:  Yes.

THE COURT: Defense counsel, you satisfied with the factual basis?

MR. MORGAN: Satisfied.

THE COURT: People?

MR. TETER: Yes, your Honor, with one clarification.  In addition to ex -- or excuse me, Braunstein and Associates you also operated Expert Financial in Wayne County, is that right?

MR. WHITE: Yes, Sir.

MR. TETER: That was the same type of business engaged in the same type of activity?

MR. WHITE: Yes, Sir.

MR. TETER: And that had over 300 clients, is that right, and the total amount that you took in was over seven hundred thousand?

MR. WHITE: Yes.

MR. TETER:  Your Honor, for the continuing criminal enterprise you can use counts both outside and inside

9

Oakland County, we believe there's been a sufficient
factual basis.

THE COURT: Defense counsel?

MR. MORGAN: Satisfied.

(*Id.,* PageID.973-974).

After addressing the factual basis, the court returned to the issue of whether

there were any agreements between the parties that had not been made part of the

record.  The AG explained that there was an agreement related to White's wife.

Under that agreement, if White pleaded guilty, then his wife would not be charged

with any felony offenses related to BA. (*See id*. at 27, PageID.976.)  Instead, she

would face only "misdemeanor charitable trust violations." (*Id*.)  In addition, the

parties agreed that White would not face any additional charges arising from his

conduct in Wayne County and/or his conduct with another entity called Expert

Financial. (*See id*.)  The court then confirmed with White that he understood and

accepted that agreement as explained by the AG. (*See id*.)

The court next again confirmed with White that there were no other promises

or threats made to White:

THE COURT: Are there any other promises, threats, or
inducements that have not been placed on the Record to
make you plead guilty today?

MR. WHITE: No, Sir.

(*Id.* at 28, PageID.977.)

10

Finally, the court confirmed with both counsel that there were no other threats or inducements made to White:

> THE COURT: Are either the People or defense counsel aware of any other promises, threats, or inducements other than those already disclosed on the Record in order to induce the defendant to tender the plea?
>
> MR. TEETER: No, your Honor.
>
> MR. MORGAN: None.

(*Id*. at 28-29, PageID.977-978.)

The court then found White's pleas to be "understanding, voluntarily and accurately made," and the court accepted White's guilty pleas on behalf of both himself and BA. (Id. at 29, PageID.978.)

## D

Sentencing was scheduled for September 27, 2012 – roughly 60 days after White entered his plea. When the parties appeared for sentencing, Morgan told the court that White did not have the $20,000 in restitution that was to be paid that day under the terms of the *Cobbs* evaluation. (*See* 9/27/2012 Tr. at 4, ECF No. 5-3, PageID.983.) Morgan also told the court that White suspected that he may be having a heart attack. (*See id*.) The court declared White to be in breach of his restitution payment obligation under the *Cobbs* evaluation, revoked his bond, and noted that it would adjourn the sentencing so that White's health condition could be assessed. (*See id*. at 5, PageID.984.)

**E**

The actual sentencing occurred on October 3, 2012. At the sentencing hearing, Morgan explained that White had been able to obtain the $20,000 that was originally due 60 days after the plea hearing and that those funds would be tendered to the court if the court agreed to adhere to its *Cobbs* evaluation (including the provision of that agreement calling for a delay in the sentence). (*See* 10/3/2012 Tr., at 10, ECF No. 5-4, PageID.997.) The court said that it would not stick to the *Cobbs* evaluation because White failed to pay the $20,000 on the date it was due. (*See id*. at 26-27, PageID.1013-1014.)

Before announcing sentence, the court quoted from numerous victim impact letters. (*See id*. at 19-24, PageID.1008-1013.) The victims described the substantial hardship they experienced as a result of their dealings with White and BA. The court ultimately sentenced White to a term of 280 months to 40 years in prison and ordered him to pay $283,245.00 in restitution. (*See id*. at 25-26, PageID.1014-1015.)

**F**

Following sentencing, White, through new counsel, moved to withdraw his plea. He argued that he should be permitted to withdraw his plea for two reasons: (1) the trial court erroneously concluded that his failure to pay $20,000 at the originally-scheduled sentencing amounted to non-compliance with the conditions of the court's *Cobbs* evaluation and (2) he received ineffective assistance of counsel.

12

(*See generally* 4/24/2013 Tr., ECF No. 5-6.)  White also asked the court to hold an

evidentiary hearing.

White supported the motion with his own affidavit.  In the affidavit, he set

forth facts supporting his claim that Morgan provided ineffective assistance of

counsel:

> 2.      I was originally represented in this case by attorney Sanford Shulman, through the preliminary examination state of the case.
>
> 3.      When the matter was bound over to Circuit Court, I was referred to attorney Albert Hatchett for a consultation.
>
> 4.      I went to Albert Hatchett's office on July 24, 2012 to meet with him, whereupon he had me meet with attorney Richard H. Morgan, Jr.
>
> 5.      On July 24, 2012, I met with Mr. Morgan for not more than 30 minutes, wherein we discussed only what steps my prior counsel had taken and did not discuss the details of the charges against me.
>
> 6.      I agreed to retain Mr. Morgan on July 24, 2012, meanwhile a Pre-Trial had previously been scheduled for July 26, 2012 by the Court.
>
> 7.      On July 25, Mr. Morgan called me for just a few minutes indicating that he planned to go forward with the July 26 Pre-Trial and inquiring about payment of his fees.
>
> 8.      On July 26, 2012, Mr. Morgan appeared at Court at approximately 1:30pm and said hello to me, then indicated he need to speak to the prosecutor.

9.     After a little while, Mr. Morgan came back to me and indicated that I had to take the offer of the prosecutor, namely to plead as charged, or they were going to arrest my wife and my children would be taken away from us.

10.    Mr. Morgan told me I had 5 minutes to decide.

11.    Mr. Morgan stated there was nothing else he could do for me.

12.    I appeared on the record before the Judge at 2:03pm.

13.    Mr. Morgan met with me for no more than 15 to 20 minutes total on the date of the Pre-Trial (July 26, 2012).

14.    Mr. Morgan did not request that I provide him with any documents regarding the case. nor did he inquire with me as to any of the alleged victims or transactions.

15.    Mr. Morgan never advised me of the elements of the crimes with which I was charged, nor did we discuss any triable issues in the case.

16.    Mr. Morgan never requested the discovery from Mr. Shulman and based upon information and belief never requested or received discovery from the prosecutor prior to the Plea hearing.

17.    Mr. Morgan pressured me into taking the plea and never took the time to discuss the case in any detail.

17.    Mr. Morgan did not ask me about any witnesses for or against me, nor did he talk to any witnesses.

18.    Mr. Morgan did not request any adjournment of the Pre-Trial, even though he was not formally retained

14

until the day of the Pre-Trial and was not prepared or knowledgeable about my case.

19.    Mr. Morgan was not paid any amount by me until my prior attorney sent him the funds on the day of the Pre-Trial (July 26, 2012).

20.    I do not believe that Mr. Morgan could possibly have known enough about my case to make a plea recommendation on the date of the Pre-Trial.

21.    I felt very pressured to plead on that date in the face of the threat of losing my children and having my wife charged with felony crimes.

22.    I believe Mr. Morgan's representation was wholly inadequate in this case, before, during and after the Plea hearing.

23.    After the plea hearing, I told Mr. Morgan I wished to withdraw my Plea and he did nothing but discourage me stating that Judge Warren would never do ii and would slap a bond on me so large I'd never get out of jail.

(White Aff. at ¶¶ 2-23, ECF No. 1-7, PageID.703-705.)

The court held a hearing on White's motion to withdraw his plea. During the hearing, the court said that it was troubled by what it regarded as the conflict between White's sworn statements during the plea colloquy and the sworn statements in his affidavit. The court expressed its concern in an exchange with defense counsel:

THE COURT:     Well, what's your response to the argument that there's no prejudice, that there's no way you would have got -- your client would have received a better deal in any event?

MR. MAYNARD:          Judge, it's clear in the affidavit of Mr. White that the result of the proceeding that day would have been different, but for the ineffective assistance because he wouldn't have pled. He only pled based on the pressure that was put upon him by Mr. Morgan after minutes of having the case in his hand.

THE COURT:      When I asked in the plea, "Are you -- you could hear and understand your attorney?"  Answer: "Yes." "THE COURT: Are you satisfied with his advice?" Answer: "Yes." [….] "Do you understand the plea agreement?"  I go through it. He says, "Yes, I understand." And then I asked all the normal advice of rights. And I asked: "Do you understand that if this Court accepts your plea, you will not have a trial of any kind, you'll be giving up all these rights I've previously described, and you'll be giving up any claim that the plea was the result of promises and threats that were not disclosed to the Court and it was not your choice to plead guilty?"  And he says, "Yes."

So now I've got him filing affidavits that say I had undue pressure; I was threatened.        There were -- and I asked him on the record don't you understand you're giving all that up; he says, "Yes."  And then I understand -- and then I go through, "Is it your choice to plead guilty?" "Yes, sir." Why should -- if I accept what he puts in the affidavits, why -- why aren't I countenancing a fraud on the court? Either he's lying to me on the record or he's lying -- or somebody else is lying to me in the affidavits.

MR. MAYNARD:          Judge, in addition to that information in the affidavits, Mr. White makes it clear that he is aware that Mr. Morgan had not conducted any inquiry into this case. He received no discovery from anybody on a case that involved hundreds of victims, thousands of documents. He could not possibly be in a position to have offered good advice on this case at that time.

16

Between that and the threats of losing his children and the threats of his wife being charged.       And,   Judge,   this case was on the record at 2:03.  It was scheduled for 1:30. That's a very short period of time for a defendant to make a decision that's going to affect the rest of his life on a case this large.

THE COURT:      You're  very  good  at  distracting  from the question I asked.  The question I asked is, he said on the record, under oath, there were no threats, there were no promises, it was his choice to make the decision, and he was satisfied with the advice of his counsel.

So if I accept your argument that, despite what he said on the record -- I guess I could      we -- the prosecutor could charge him with perjury and say he lied; now he's proven it.  He's got this affidavit that says he was under pressure; he was threatened, so he lied to you, Judge And then we could have a perjury trial.  I'm not sure, but why should I even -- even give any thought to evaluating the affidavit in light of what he said?

Otherwise, my plea agreement or my -- excuse me, my -- every plea I take is going to be subjected to second-hand affidavits if they don't like the sentence they receive.

[….]

MR. MAYNARD: [….]  We   have   to   look   at   the circumstances. We have a gentleman that is facing a huge amount of time, a huge alleged crime, threats against his wife, threats of losing his children –

THE COURT:      And then he should have spoke up and said, you know what, Judge?  They're   telling   me they're going to take away my children if I don't plead today.  That's a threat, and I don't want to go forward with this plea.  It's not my choice.

I have defendants all the time that say I'm confused; I don't understand; I want to talk to my counsel.

MR. MAYNARD: So to

THE COURT:     What's the point of going through the exercise if it's -- if it's a fraud?

(6/26/2013 Tr. at 4-8, ECF No. 5-7, PageID.1058-1062.)

The court ultimately issued a written order denying White's motion to vacate his plea. That written order is not in this Court's record.

## G

After the trial court denied White's motion to withdraw his plea, White filed a Delayed Application for Leave to Appeal with the Michigan Court of Appeals. That court granted the application. In his appeal, White argued that the trial court made three errors in connection with its denial of his motion to withdraw his plea: (1) the court erred when it declined to hold an evidentiary hearing, (2) the court erred when it concluded that White had not been denied the effective assistance of counsel, and (3) the court erred when it concluded that (a) White had breached the terms of the *Cobbs* evaluation (by failing to make the initial $20,000 payment on time) and (b) it (the court) was thus not obligated to adhere to the evaluation.

The Michigan Court of Appeals rejected these arguments and affirmed White's conviction. The court first concluded that the trial court did not err when it declined to hold an evidentiary hearing. The court explained that White was not

18

entitled to such a hearing because the sworn statements that White offered as the basis for the evidentiary hearing – *i.e.*, the statements in his affidavit – directly contradicted his sworn testimony at the plea hearing:

> In support of his request for an evidentiary hearing, defendant provided his own affidavit and affidavits from his aunt and uncle. The affidavits essentially state that defendant's counsel pressured defendant into entering a plea, that counsel was unprepared, and that counsel did not advise defendant of the charges against him or any possible defenses. At the time of the plea, however, defendant was sworn and testified that he was satisfied with the advice given by his counsel. The court also specifically explained the charges and the possible sentences. Defendant stated that it was his own choice to plead guilty and that there were no promises, threats, or inducements compelling him to tender the plea. Moreover, the fact that defendant had been represented for nearly a year by prior counsel during precharge negotiations with the Attorney General's office, and that he had at one time begun restitution payments, belies any assertion that he did not know the nature of the charges against him or any possible defenses. The statements made in defendant's affidavit directly contradict his testimony at the plea hearing. The trial court denied defendant's request for an evidentiary hearing because it found that, under the circumstances, granting an evidentiary hearing at which defendant presumably would provide testimony inconsistent with his prior testimony would be against public policy. The trial court noted: "After all, the Defendant swore under oath to this Court to a certain state of affairs, and to now allow him to attack his own sworn testimony would allow him to benefit from perjury (either at the plea or in his affidavit) as well as to countenance a fraud upon the Court."
>
> In reaching its conclusion, the trial court relied on this Court's decision in *People v. Serr,* 73 Mich.App. 19, 25–

26, 28, 250 N.W.2d 535 (1976). In that case, the defendant sought to withdraw his guilty plea as not knowing and voluntary. This Court held that when a plea is entered in accordance with the applicable court rules, a trial court is barred from considering testimony or affidavits inconsistent with statements made during the plea hearing. This Court held:

> It is the opinion of this court that where a defendant has been found guilty by reason of his own statements as to all of the elements required to be inquired into by GCR 1963, 785.7, and his attorney has also confirmed the agreement and the defendant has been sentenced, neither he nor his attorney will be permitted thereafter to offer their own testimony to deny the truth of their statements made to induce the court to act. To do so would be to permit the use of its own process to create what amounts to a fraud upon the court. This is based on public policy designed to protect the judicial process. [*Id.* at 28, 250 N.W.2d 535.]

We conclude that because defendant's offer of proof, i.e., his own affidavit, is inconsistent with defendant's own testimony during the plea hearing, the trial court did not abuse its discretion when it denied defendant's request for an evidentiary hearing.

*White*, 862 N.W.2d at 3-4.

The court next rejected White's ineffective assistance of counsel claim for similar reasons. White based that claim in large part upon statements in his affidavit, and the court held that White could not use those statements to establish that his counsel was ineffective because the statements conflicted with his sworn testimony during the plea colloquy:

20

Defendant next argues that he should have been permitted to withdraw his guilty plea because he was denied the effective assistance of counsel. Defendant argues that his trial counsel failed to explain the nature of the charges and possible defenses, and that he pressured defendant into accepting the plea. We disagree that defendant was denied the effective assistance of counsel.

When ineffective assistance of counsel is claimed in the context of a guilty plea, the relevant inquiry is whether the defendant tendered the plea voluntarily and understandingly. *People v. Armisted,* 295 Mich.App. 32, 48, 811 N.W.2d 47 (2011). Guilty pleas have been deemed involuntary or unknowing when defense counsel failed to explain adequately the nature of the charges. *People v. Corteway,* 212 Mich.App. 442, 445, 538 N.W.2d 60 (1995). Guilty pleas have also been found to be involuntary when counsel failed to explain possible defenses to the charges. *People v. Fonville,* 291 Mich.App. 363, 394, 804 N.W.2d 878 (2011). Under those circumstances, the effective assistance of counsel has been denied because the defendant has been deprived of the ability to make an intelligent and informed decision regarding the available options. *Corteway,* 212 Mich.App. at 445, 538 N.W.2d 60.

*Defendant testified at the plea proceeding that he fully understood the plea and the sentencing evaluation, that he was satisfied with his legal advice, and that he was not under any pressure to tender the guilty plea. Defendant's contradictory affidavit is insufficient to contradict his sworn testimony in open court. Armisted,* 295 Mich.App. at 49, 811 N.W.2d 47. The record below indicates that defendant knowingly and voluntarily accepted the plea agreement.

*Id.* at 4-5 (emphasis added).

The court also concluded that White's ineffective assistance counsel claim failed for the additional and independent reason that White failed to show that he had a viable defense to the charges against him:

> Further, defendant has not established that he had a viable defense of which his counsel failed to advise him. Defendant devotes a great deal of his brief on appeal to explaining that he operated a legitimate business that processed loan modification applications under the Home Affordable Modification Program. Defendant represents that the banks and other lenders as a whole did not live up to their obligations under the program. Thus, apparently, the defense that defendant was deprived of asserting was that struggling homeowners suffered financial losses simply because the financial institutions set up roadblocks for individuals seeking relief under the program. We conclude that defendant has not articulated a viable defense. The defense he sets forth does not even address the charges that defendant misrepresented to his customers that he had attorneys on staff to prepare and present modification proposals. This defense further does not address the charge that the applications were incomplete or, indeed, never even submitted to the program. Considering this, defendant has not established that his plea was unknowing and involuntary because his counsel failed to advise him of a viable defense.

*Id.*

Finally, the court held that the trial court did not err when it concluded that White breached the terms of the *Cobbs* evaluation by failing to timely make the initial $20,000 restitution payment. Based upon its review of the plea transcript, the court concluded that "the timely making of the initial $20,000 restitution payment was a specific precondition of being sentenced in accordance with

22

the *Cobbs* evaluation." *Id.* at 6.   And the court ruled that "[b]ecause defendant failed to comply with a precondition, the trial court was not bound by the preliminary sentence evaluation, and defendant was not entitled to an opportunity to withdraw his plea." *Id.*

White thereafter filed an Application for Leave to Appeal in the Michigan Supreme Court.   That court denied the application because it was not persuaded that the questions presented should be reviewed. *See People v. White*, 862 N.W.2d 226 (Mich. 2015); *reconsideration den.*, 869 N.W.2d 576 (Mich. 2015).

### H

In October of 2016, White, through new counsel, returned to the state trial court and filed a motion for relief from judgment under Michigan Court Rule 6.502. (*See* Mot. for Relief from Judgment, ECF No. 5-9.)   White asserted five claims in that motion, and he requested an evidentiary hearing.   Two of those claims are relevant to the habeas claims now before this Court.

First, White claimed that he received ineffective assistance of counsel in connection with his decision to plead guilty, and he contended that because he received deficient representation his plea "could not be considered knowing and voluntary." (*Id.*, PageID.1113.)   More specifically, he argued that his plea was invalid because Morgan failed to investigate the case and failed to advise him (White) that he had a viable defense to the charges against him. (*Id.*)   In support of

23

this ineffective assistance claim, White relied upon, among other things, the same

affidavit he had submitted in support of his earlier motion to withdraw his plea based

upon ineffective assistance of counsel. (*See id*.)   White explained the basis of his

claim that Morgan's deficient representation rendered his plea invalid as follows:

> Michigan courts have also long stressed the importance of a knowing and voluntary plea. *People v Pickens,* 446 Mich 298,521 NW2d 797 (1994). Only when the defendant understands the consequences of the plea can the plea be considered voluntary. *Brady,* 397 US 742; *People v Armisted,* 295 Mich App 32, 48; 81I NW2d 47 (201 I). Guilty pleas have also been found to be involuntary when counsel failed to explain possible defenses to the charges. *People v Fonville*, 291 Mich App 363, 394; 804 NW2d 878 (2011). Under those circumstances, the effective assistance of counsel has been denied because the defendant has been deprived of the ability to make an intelligent and informed decision regarding the available options. *People v Corteway*, 212 Mich App 442, 445; 538 NW2d 60 (1995). This is precisely what occurred in this case.
>
> Mr. White asserts that his plea was unknowing and involuntary where counsel was retained only days before he pled, spent only 30 minutes with Mr. White prior to the pre-trial conference where Mr. White pled guilty to all charges, did no investigation, never articulated the valid defenses available, did not request discovery material, never reviewed the case materials in Appellant's possession, and pressured Mr. White into accepting a plea deal offered minutes before the court ultimately accepted the plea (See affidavit of Rickey White, Appendix E; see also affidavits of Regina and Willie Cross, Appendix F).
>
> Indeed, Mr. White only accepted this plea because defense   counsel   explained   that   the   prosecutor

> threatened to arrest and charge his wife and take away
> his children if he did not. Under these circumstances,
> the plea cannot be considered knowing and voluntary.

(*Id.*, PageID.1112-1113.)

White said that he could show prejudice from Morgan's deficient performance in two ways. He said that he was entitled to a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648 (1984), because Morgan's alleged total failure to investigate the case amounted to the constructive denial of counsel during the plea-bargaining process. (*Id.*, PageID.1113-1115.) He then contended in the alternative that he could show actual prejudice because Morgan failed to discover and present a viable defense to the charges. In support of his claim that he had a viable defense, White submitted business records that, he claimed, demonstrated that BA had, in fact, performed substantial work on behalf of its clients in a good faith effort to obtain loan modifications for them. (*See* Exs. To Mot. for Relief from Judgment, ECF No. 5-9, PageID.1155-1769.)

Second, White claimed that his counsel on direct appeal was ineffective for failing to raise the ineffective assistance of counsel claim presented in his motion for relief from judgment. (*See* Mot. for Relief from Judgment, ECF No. 5-9, PageID.1144.)

**I**

The state trial court denied White's motion for relief from judgment in an Opinion and Order dated January 18, 2017. (*See* St. Ct. Op. and Order, ECF No. 1-11.) The court rejected White's ineffective assistance claim for two reasons. First, the court held that Michigan Court Rule 6.508(D)(2) barred relief on the claim because the claim had been "raised and decided [against White] on appeal." (*Id.*, PageID.760.) The court then rejected White's contention that the claim somehow differed from the one presented earlier to the Michigan Court of Appeals. (*See id.*) Second, the court held that even if the claim was not barred by Mich. Ct. Rule 6.508(D)(2), it would fail on the merits because the factual bases for the claim – *i.e.*, the statements in White's affidavit that Morgan did not investigate the case and that he (White) was pressured into pleading guilty – were "directly contrary to [White's] testimony under oath at his plea that he was satisfied with counsel's advice, entered the plea freely, [and] was not under undisclosed pressure or threats to plea[d]." (*Id.*, PageID.761.) The court added that the claim would also fail because White failed to show that he had a viable defense to the charges against him. (*See id.*, PageID.761-764.) The court explained that even if White had done some legitimate work on his clients' files as White claimed, he was still guilty because his convictions were nonetheless "based on two false pretenses, *i.e.*, (1) that he had lawyers on staff; and

(2) that he guaranteed the mortgage modification and would return the money if unsuccessful…." (*Id*. PageID.761-762.)

Finally, the court held that White was not entitled to an evidentiary hearing on his ineffective assistance of counsel claim:

> A *Ginther* hearing is likewise unnecessary. For the reasons *supra*, neither the affidavits from 2013 previously submitted to this Court and on direct appeal but rejected, nor the business logs or any of the other evidence now presented, reflect a viable defense to the charges to which the Defendant pled, or show that, but for trial counsel's errors, the result would have been different, or that the result of the proceedings was fundamentally unfair or unreliable, or a defect in the proceedings that renders the plea an involuntary one to a degree that would be manifestly unjust to allow the convictions to stand.

(*Id.*, PageID.764.)

White sought leave to appeal the denial of his motion for relief from judgment, but the Michigan Court of Appeals and Michigan Supreme Court both denied leave. *See People v. White* No. 336867 (Mich. Ct. App. May 17, 2017) (denying leave of appeal); *People v. White*, 917 N.W.2d 670 (Mich. 2018) (same).

## J

On November 26, 2018, White, through retained counsel, filed a petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1). In the petition, White raised the following claims:

I.   Petitioner was denied the effective assistance of counsel guaranteed by the federal and state constitutions (U.S.

Const., Am. VI, Const 1963, Art. 1, § 20) where trial counsel failed to investigate the case and properly advise petitioner of an obvious and substantial defense rendering his plea involuntary.

    A. Constructive Denial of Counsel Under *United States v. Cronic.*

    B. Request for an Evidentiary Hearing.

    C. Failure to Investigate and Present Mr. White with Viable Defenses.

II.    Petitioner White was denied the effective assistance of counsel guaranteed by the federal and state constitutions (U.S. Const., Am. VI; const. 1963, Art. 1, § 20) where his direct appeal counsel failed to raise critical issues which would have been outcome-determinative on appeal.

Respondent filed an Answer to the petition (*see* Ans., ECF No. 4), and White filed a reply. (*See* White Reply, ECF No. 6). The Court thereafter held a hearing on the claims in the petition and ordered the parties to file several rounds of supplemental briefing. The parties filed the required briefs (*see* Supp. Brs., ECF Nos. 15, 16, 20, 32, 37, 38, 39), and the matter is now ready for decision.

## II

As White acknowledged in his habeas petition, the state courts decided his claims on the merits, and the claims are therefore reviewed under the standards

established in AEDPA. (*See Pet.*, ECF No. 1, PageID.24-26, 29.[1])  AEDPA requires

federal courts to uphold state court adjudications on the merits unless the state court's

decision (1) "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," or

(2) "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." *Id.*  "The question under AEDPA is not

whether a federal court believes the state court's determination was incorrect but

whether that determination was unreasonable – a substantially higher threshold."

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

---

[1] In one of White's final supplemental briefs, he contended for the first time that the state courts did not adjudicate his claims on the merits and that AEDPA thus does not apply. (*See* White Supp. Br., ECF No. 37, PageID.4856.)  White says that there was no merits determination because the state courts "fail[ed] to consider his affidavit and grant him an evidentiary hearing." (*Id.*, PageID.4856.)  But the state courts did not "fail to consider" White's affidavit.  On the contrary, as described above, they reviewed its content and determined that that content was not sufficient to support his claim for relief.  Moreover, the fact that a state court did not hold an evidentiary hearing does not mean that the court did not issue a decision on the merits. *See, e.g., Ballenger v. Prelesnik*, 709 F.3d 558, 560-62 (6th Cir. 2013) (treating state-court rejection of ineffective assistance of counsel claim as a merits adjudication even though state court of appeals refused to remand for an evidentiary hearing on the claim).  Finally, while the trial court initially rejected White's ineffective assistance claim on procedural grounds under Michigan Court Rule 6.508(D)(2) (see St. Ct. Op. and Order, ECF No. 1-11 PageID.760), the court then proceeded to address the claim on the merits. (*See id.*, PageID.761-764.)  That alternative merits holding is entitled to AEDPA deference. *See Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008) (holding that alternative merits holding is entitled to AEDPA deference).

### III

### A

In order to be valid, a guilty plea by a criminal defendant in a state court must be "intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  In some circumstances, an attorney's ineffective assistance may render a defendant's plea involuntary and/or unknowing. *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). A defendant who claims that his plea was involuntary and/or unknowing based upon his lawyer's ineffectiveness must satisfy the familiar two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984). *See id.* at 57-58.  More specifically, he must show that (1) counsel's performance was deficient and (2) absent the deficient performance, there is a reasonable probability that the defendant "would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Here, White argued to the state courts that he received ineffective assistance of counsel in connection with his decision to plead guilty and that his guilty plea was therefore neither knowing nor voluntary. The state courts rejected this ineffective assistance claim because it rested upon statements by White in his post-plea affidavit that contradicted his sworn statements to the trial court during his plea colloquy. White is not entitled to habeas relief because he has not shown that (1) the state courts' rejection of his ineffective assistance claim involved an unreasonable

determination of the facts or (2) the state courts acted contrary to, or unreasonably applied, clearly established federal law.

### B

To begin, White has not demonstrated that the state courts' rejection of his ineffective assistance claims rested upon an unreasonable determination of the facts. More specifically, he has not shown that the state courts erred when they found that the key assertions in his post-plea affidavit are inconsistent with his sworn testimony at the plea colloquy.  Indeed, White has not even taken issue with that finding by the state courts.  Under these circumstances, White has not carried his burden to show that the state courts unreasonably determined the facts when they found that the statements in his affidavit contradicted his plea hearing testimony.

### C

Next, White has not demonstrated that the state courts acted contrary to, or unreasonably applied, clearly established federal law when they rejected his ineffective assistance claims.  In rejecting those claims, the state courts appeared to apply a bright-line rule under Michigan law that a criminal defendant may never establish that his attorney's ineffectiveness rendered his plea invalid based upon statements in a post-plea affidavit that contradict his sworn statements during his plea colloquy.  For instance, the Michigan Court of Appeals applied what appears to be a *per se* rule under which a criminal defendant may never establish his attorney's

31

ineffectiveness through statements in his post-plea affidavit that contradict his plea colloquy. *See White*, 862 N.W.2d at 4 (citing and applying *People v. Armisted, supra*). Likewise, both the Court of Appeals and the trial court applied what appears to be a *per se* rule under which a defendant's post-plea statements that contradict his plea colloquy are never enough to warrant an evidentiary hearing in support of a defendant's attack on the validity of his guilty plea. *See id.* (applying *People v. Serr, supra*); St. Ct. Op. and Order ECF No. 1-11, PageID.761-764 (same).

These categorical rules seem to be stricter than the standard applied by the United States Court of Appeals for the Sixth Circuit. That court has explained that a criminal defendant is ordinarily "bound by" his statements during a properly-administered plea-colloquy. *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). But that court has also concluded that a defendant is not necessarily barred from obtaining relief based upon post-plea statements that conflict with the plea colloquy if the defendant demonstrates "extraordinary circumstances, or some explanation of why defendant did not reveal" the conflicting information during the plea colloquy. *Id*.

However, the question under AEDPA is not whether the state courts applied a rule that conflicts with Sixth Circuit precedent. Instead, the question is whether those courts applied a rule that contravenes "clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

White has not persuaded the Court that such law requires a state court to permit a defendant to attack the validity of his plea through statements in a post-plea affidavit that contradict the defendant's sworn statements during his plea colloquy.

1

White first contends that the Supreme Court's decision in *Blackledge v. Allison*, 431 U.S. 63 (1977), holds that a state court may not categorically bar a defendant from attacking the validity of his plea based upon post-plea assertions that contradict his plea colloquy.   However, the language from *Blackledge* on which White relies does not constitute "clearly established federal law" under AEDPA.

The defendant in *Blackledge* (a man named Allison) pleaded guilty to attempted safe robbery in a North Carolina state court.   His plea hearing was not transcribed.  Instead, the state court proceeded as follows:

> the judge in open court read from a printed form 13 questions, generally concerning the defendant's understanding of the charge, its consequences, and the voluntariness of his plea. Allison answered "yes" or "no" to each question, and the court clerk transcribed those responses on a copy of the form, which Allison signed. So far as the record shows, there was no questioning beyond this routine; no inquiry was made of either defense counsel or prosecutor.

*Id.* at 65.  Two of the questions on the printed form were relevant to the issues before the Supreme Court.  Those questions were: "Question No. 8 'Do you understand that upon your plea of guilty you could be imprisoned for as much as minimum (sic ) of

10 years to life?' to which Allison answered 'Yes'; and Question No. 11 'Has the

Solicitor, or your lawyer, or any policeman, law officer or anyone else made any

promises or threat to you to influence you to plead guilty in this case?' to which

Allison answered 'No.'" *Id.* at 65-66.  Three days after Allison pleaded guilty, the

state court sentenced him to serve 17-21 years in prison.

Allison later brought a petition for a writ of habeas corpus in federal district

court.  He claimed that "his guilty plea was induced by an unkept promise, and

therefore was not the free and willing choice of the petitioner, and should be set aside

by this Court." *Id.* at 68.   Allison's habeas petition offered the following facts in

support of his claim:

> 'The petitioner was led to believe and did believe, by Mr.
> Pickard (Allison's attorney), that he Mr. N. Glenn Pickard
> had talked the case over with the Solicitor and the Judge,
> and that if the petitioner would plea(d) guilty, that he
> would only get a 10 year sentence of penal servitude. This
> conversation, where the petitioner was assured that if he
> plea(ded) guilty, he would only get ten years was
> witnessed by another party other than the petitioner and
> counsel.
>
> 'The petitioner believing that he was only going to get a
> ten year active sentence, allowed himself to be pled guilty
> to the charge of attempted safe robbery, and was shocked
> by the Court with a 17-21 year sentence.
>
> 'The petitioner was promised by his Attorney, who had
> consulted presumably with the Judge and Solicitor, that he
> was only going to get a ten year sentence, and therefore
> because of this unkept bargain, he is entitled to relief in
> this Court.

> 'The petitioner is aware of the fact that he was questioned by the trial Judge prior to sentencing, but as he thought he was only going to get ten years, and had been instructed to answer the questions, so that the Court would accept the guilty plea, this fact does not preclude him from raising this matter especially since he was not given the promised sentence by the Court.
>
> '. . . The fact that the Judge, said that he could get more, did not affect, the belief of the petitioner, that he was only going to get a ten year sentence.'

*Id.* at 68-69 (quoting habeas petition).

The district court summarily dismissed Allison's petition without holding an evidentiary hearing, but the Fourth Circuit reversed. The Fourth Circuit held that Allison's allegations were sufficient to entitle him to an evidentiary hearing on his claim. *See id*. at 70-71. The Supreme Court then granted the warden's petition for a writ of *certiorari* in order to review whether Allison was entitled to an evidentiary hearing in his federal habeas proceedings. *See id*.

The Supreme Court held that Allison was entitled to such a hearing and that the district court had erred in summarily dismissing his petition based solely upon his answers on the plea form. The Supreme Court explained that while a criminal defendant's statements in connection with the entry of a plea in state court constitute "a formidable barrier" to relief in later federal collateral proceedings attacking the plea, that barrier is not "insurmountable":

[T]he representations of the defendant, his lawyer, and the prosecutor at such a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. *Machibroda*, *supra*, 368 U.S. at 495-496, 82 S.Ct., at 514 (s 2255); *Price v. Johnston, supra*, at 334 U.S. 266, 286-287, 68 S.Ct. 1049, 1060-1061, 92 L.Ed. 1356 (s 2243).

What [our decisions] indisputably teach, however, is that the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable. In administering the writ of habeas corpus and its s 2255 counterpart, the federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

*Id.* at 74-75.

White highlights the Supreme Court's prohibition against "*per se* rule[s] excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." White insists that the Michigan Court of Appeals and the state trial court acted contrary to that prohibition by applying against

36

him *per se* rules that prevent a defendant from attacking the validity of his plea through statements in an affidavit that contradict his plea colloquy.

There is some merit to White's argument. As described above, it does appear that the state courts applied against him the type of *per se* rules of which the Supreme Court disapproved in *Blackledge*.

The problem for White is that the passage from *Blackledge* concerning *per se* rules on which he relies is not "clearly established federal law" under AEDPA. A Supreme Court ruling amounts to "clearly established federal law" only when it "sets forth a rule applicable to state proceedings." *Early v. Packer*, 537 U.S. 3, 10 (2003) (holding that prior Supreme Court decisions concerning jury instructions did not amount to "clearly established federal law" because the decisions concerned only instructions in federal criminal trials).[2] *Blackledge* did not do that. As explained above, the question before the Supreme Court in *Blackledge* concerned the circumstances under which a *federal district court* could summarily dismiss a

---

[2] The United States Court of Appeals for the Ninth Circuit has similarly explained that "[w]hen the Supreme Court does not purport to interpret any provision of the Constitution, then '[t]hat alone would be enough to defeat a claim that [the] application [of the case] to state court proceedings is 'clearly established.'" *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010). While this statement may be a bit too broad – it would seem, for instance, that a Supreme Court decision holding that a United States treaty imposed obligations on a state court could constitute "clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) – the statement correctly underscores that a Supreme Court decision amounts to "clearly established federal law" for AEDPA purposes only if it adopts a rule that is applicable to the states.

*federal* habeas petition without holding an evidentiary hearing.  The Supreme Court answered that question by providing direction – in the very portion of the Opinion on which White relies – to *federal courts*: "*In administering the writ of habeas corpus and its s 2255 counterpart, the federal courts* cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Blackledge*, 731 U.S. at 75-76 (emphasis added).  The Supreme Court in *Blackledge* did not say (or hold) that any portion of its ruling applied to the state courts.  Nor did the Supreme Court say that its ruling rested upon an interpretation or application of the United States Constitution or on some other provision of federal law that may be binding on state courts.  Simply put, *Blackledge* decided only a question of federal habeas procedure.[3]  For that reason,

---

[3] Even though the Supreme Court in *Blackledge* squarely decided only a question of federal habeas procedure, there may a reasonable argument that the Constitution prohibits states from adopting *per se* rules that categorically prohibit a defendant from attacking the validity of his plea through statements that contradict his plea colloquy.  Indeed, the Supreme Court said that federal district courts cannot adopt *per se* rules insulating pleas from attacks in federal habeas proceedings because the very purpose of those proceedings is to protect "constitutional guarantees." *Blackledge*, 431 U.S. at 72.  Since the adoption of *per se* rules in federal habeas proceedings frustrates the ability of federal courts to sufficiently protect the "constitutional guarantees" concerning a valid guilty plea, it may well follow that a state court's adoption of such rules would prevent that court from sufficiently protecting those guarantees.  This Court does not mean to suggest that state courts may, consistent with the Constitution, adopt and apply the type of *per se* rules

the portion of *Blackledge* on which White relies does not amount to "clearly established federal law" under AEDPA, and thus White is not entitled to habeas relief on the ground that the state courts here applied against him the type of *per se* rule disapproved by the Supreme Court in *Blackledge*.[4]

White counters that the decision of the United States Court of Appeals for the Tenth Circuit in *Tovar-Mendoza v. Hatch*, 629 F.3d 1261 (10th Cir. 2010), suggests that *Blackledge* may constitute clearly established federal law.  White's reliance on *Tovar-Mendoza* is understandable.  As in White's case, the petitioner in *Tovar-*

---

applied by the Michigan courts in this case.  The Court holds only that *Blackledge* does not squarely prevent state courts from doing so.

[4] Respondent suggested during one of the hearings before the Court that the state courts in White's case did not apply a "*per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Blackledge*, 431 U.S. at 74-75.  Respondent argued that, instead, the state courts merely applied a rule that bars a defendant from establishing the invalidity of his plea based solely upon his own sworn post-plea statements that contradicted his plea colloquy.   According to Respondent, this rule is not inconsistent with *Blackledge* because it leaves open the possibility that a defendant could establish the invalidity of the plea through his own statements plus other evidence that corroborates those statements.  The Court need not (and does not) reach this argument.  Likewise, the Court need not reach (and does not reach) the additional argument made by Respondent that even if *Blackledge* is "clearly established federal law," it does not entitle White to relief here because the Supreme Court in *Blackledge* recognized that Allison may not have been entitled to an evidentiary hearing had the State of North Carolina utilized different plea procedures – including procedures now used by Michigan state courts. *See Blackledge*, 431 U.S. at 79 ("Had these commendable procedures been followed in the present case, Allison's petition would have been cast in a very different light.").

*Mendoza* attacked his plea in state court based upon statements in his own affidavit, the state court summarily denied relief on the ground that such statements could not overcome his statements in his plea colloquy, and the petitioner then sought habeas relief in federal court.  When the case reached the Tenth Circuit, that court applied "the *Blackledge* analytical framework" to the petitioner's claim that the state courts erred. *Id*. at 1271.  Moreover, the Tenth Circuit held that the petitioner was entitled to habeas relief based upon contentions that could not be reconciled with his statements during the plea colloquy. *See id.*

But *Tovar-Mendoza* is distinguishable in one critical respect.  The Tenth Circuit did "not … apply" the standard set forth in Section 2254(d)(1) – the standard under which a habeas petitioner must show that a state court contravened "clearly established federal law, as determined by the Supreme Court of the United States." *Id*. at 1268.  Thus, the Tenth Circuit was free to apply "the *Blackledge* analytical framework*"* irrespective of whether *Blackledge* amounted to "clearly established federal law."  For this reason, the Court declines to read *Tovar-Mendoza* as holding that *Blackledge* is "clearly established federal law."  Moreover, the Tenth Circuit in *Tovar-Mendoza* recognized, as this Court highlighted above, that the Supreme Court in *Blackledge* "admoni[shed] that *federal courts*" not apply *per se* rules insulating guilty pleas from collateral attacks. *Id*. at 1271 (emphasis added).

40

For all of these reasons, the Court concludes that White is not entitled to habeas relief on the ground that the state courts acted contrary to, or unreasonably applied, *Blackledge* when they rejected White's ineffective assistance of counsel claim.

## 2

White also relies on *Lee v. United States*, 137 S.Ct. 1958 (2017), but that decision does not address the circumstances presented here.  In *Lee*, a defendant who pleaded guilty to a federal offense faced deportation as a result of his plea.  The defendant then moved to withdraw his plea based upon ineffective assistance of counsel.  He claimed that counsel erroneously advised him that his plea would not subject him to deportation.  The primary issue before the Supreme Court was whether the defendant could establish prejudice as a result of his attorney's bad advice.  The government argued that he could not establish prejudice because he had no viable defense to the charges against him and thus would have been convicted even if he had pleaded not guilty and gone to trial.  The Supreme Court rejected that argument and held that the defendant could establish prejudice by showing that he would not have pleaded guilty if he had known that such a plea would result in his deportation.  The Supreme Court then held that the defendant had made such a showing:

Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

In the unusual circumstances of this case, we conclude that Lee has adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation. There is no question that "deportation was the determinative issue in Lee's decision whether to accept the plea deal." Report and Recommendation, at 6–7; see also Order, at 14 (noting Government did not dispute testimony to this effect). Lee asked his attorney repeatedly whether there was any risk of deportation from the proceedings, and both Lee and his attorney testified at the evidentiary hearing below that Lee would have gone to trial if he had known about the deportation consequences. See Report and Recommendation, at 12 (noting "the undisputed fact that had Lee at all been aware that deportation was possible as a result of his guilty plea, he would ... not have pled guilty"), adopted in relevant part in Order, at 15.

Lee demonstrated as much at his plea colloquy: When the judge warned him that a conviction "could result in your being deported," and asked "[d]oes that at all affect your decision about whether you want to plead guilty or not," Lee answered "Yes, Your Honor." App. 103. When the judge inquired "[h]ow does it affect your decision," Lee responded "I don't understand," and turned to his attorney for advice. *Ibid.* Only when Lee's counsel assured him that the judge's statement was a "standard warning" was Lee willing to proceed to plead guilty. *Id.,* at 210.

[….]

Lee's claim that he would not have accepted a plea had he known it would lead to deportation is backed by substantial and uncontroverted evidence. Accordingly we

42

> conclude Lee has demonstrated a "reasonable probability
> that, but for [his] counsel's errors, he would not have
> pleaded guilty and would have insisted on going to
> trial." *Hill,* 474 U.S., at 59, 106 S.Ct. 366.

*Lee,* 137 S. Ct. at 1967-69.

Two aspects of this passage from *Lee* confirm that it does not support White's position here. First, the Supreme Court stressed that in evaluating whether to upset a guilty plea based upon alleged ineffective assistance of counsel, a court must look beyond a defendant's post-plea assertions and must carefully examine whether the contemporaneous evidence (*i.e.*, the evidence from the time of the plea) supports the claim of ineffective assistance of counsel. Here, White's ineffective assistance claim rests largely upon his post-hoc assertions and is not supported by persuasive contemporaneous evidence that casts doubt on the validity of the plea. Second (and more importantly), in sharp contrast to White's case, the post-hoc statements on which *Lee* relied to support his ineffective assistance claim *could* be reconciled with his sworn testimony at the plea colloquy. Indeed, the Supreme Court stressed that Lee's plea colloquy "demonstrated" the veracity of his post-plea assertion that his decision to plea guilty hinged in large part on his belief that he would not be deported. *Id.* at 1968. *Lee* does not suggest – or hold – that a defendant may establish ineffective assistance of counsel through his own post-plea statements that *conflict* with his sworn testimony at a plea hearing. Simply put, the state courts here did not act contrary to, nor did they unreasonably apply, any holding from *Lee* when they

ruled that White could not establish the invalidity of his plea based upon statements in his affidavit that contradicted his sworn statements in his plea colloquy.

In sum, White is not entitled to habeas relief on his ineffective assistance of counsel claims because (1) the state courts rejected those claims on the ground that they rested upon assertions in his post-plea affidavit that contradicted his plea colloquy and (2) White has not shown that in so ruling, the state courts acted contrary to, or unreasonably applied, clearly established federal law.

## IV

White next contends that even if he is not yet entitled to habeas relief, he is entitled to an evidentiary hearing on his ineffective assistance claims.  He says that this Court should hold an evidentiary hearing because he "was diligent in his pursuit" of such a hearing in the state courts, but those courts declined to hold such a hearing and thereby prevented him from developing a record to support his claims. (Pet., ECF No. 1, PageID.37.)  The Court concludes that it may not hold an evidentiary hearing.

The Sixth Circuit recently explained the rules governing evidentiary hearings in claims governed by AEDPA as follows:

> Section 2254(d) also determines which facts a federal court can consider. When assessing whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), the reviewing court "is limited to the record that was before the state court that

44

adjudicated the claim on the merits," *Pinholster*, 563 U.S. at 181, 131 S.Ct. 1388. Because of this, a district court cannot use a federal evidentiary hearing to supplement the record when assessing a claim under § 2254(d). *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 465 (6th Cir. 2012). That said, if a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *See, e.g.*, *Brumfield v. Cain*, 576 U.S. 305, 135 S. Ct. 2269, 2276, 192 L.Ed.2d 356 (2015); *Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007); *Fears v. Bagley*, 462 F. App'x 565, 574 (6th Cir. 2012); *see also, e.g.*, *Pinholster*, 563 U.S. at 205, 131 S.Ct. 1388 (Breyer, J., concurring in part and dissenting in part) ("For example, if the state-court rejection assumed the habeas petitioner's facts (deciding that, *even if* those facts were true, federal law was not violated), then (after finding the state court wrong on a [§ 2254](d) ground) [a federal habeas] hearing might be needed to determine whether the facts alleged were indeed true."); *cf., e.g.*, *Hurles v. Ryan*, 752 F.3d 768, 790–91 (9th Cir. 2014) ("[W]here a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, 'the fact-finding process itself is deficient' and not entitled to deference." (quoting *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004), *abrogated on other grounds by Pinholster*, 563 U.S. 170, 131 S.Ct. 1388)); *Robinson v. Howes*, 663 F.3d 819, 823 n.2 (6th Cir. 2011) (noting that a decision would not be "on the merits" if the issue were decided without the key records establishing the basis for the claim).

If a habeas petitioner satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never "adjudicated on the merits" by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies. Instead, the petitioner's claim is reviewed *de novo* as it would be on

direct appeal. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). The district court would also be free to expand the record, provided that the petitioner diligently attempted to present those facts in state court (or alternatively if she meets AEDPA's narrow exception for evidence of actual innocence). *See, e.g.*, *Williams v. Taylor*, 529 U.S. 420, 431–32, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013); *see also* 28 U.S.C. § 2254(e)(2); *Keeling*, 673 F.3d at 465.

*Stermer v. Warren*, 959 F.3d 704, 721-22 (6th Cir. 2020).

As this passage from *Stermer* makes clear, where a state court decides a claim on the merits, a federal district court may hold an evidentiary hearing on the claim if the petitioner shows that (1) the state court acted contrary to, or unreasonably applied, clearly established federal law, (2) the state court unreasonably determined the facts, or (3) clearly established federal law required the state court to make additional fact findings.[5] For all of the reasons explained above, White has failed to make any of these showings. Thus, he is not entitled to an evidentiary hearing.

---

[5] As explained above, the Supreme Court's decision in *Blackledge* addressed questions related to when a district court must hold an evidentiary hearing, but that portion of *Blackledge* does not control the question here as to whether this Court should conduct an evidentiary hearing concerning White's ineffective assistance of counsel claim. As the passage from *Stermer* above illustrates, AEDPA now governs when a district court may hold an evidentiary hearing in connection with a claim that a state court adjudicated on the merits. *See Bowen v. Blaine*, 243 F.Supp.2d 296, 308 n.7 (E.D. Pa. 2003) (explaining that AEDPA, rather than *Blackledge*, governs whether a district court may conduct an evidentiary hearing on a claim decided on the merits by a state court).

White counters that he is entitled to an evidentiary hearing because he presented "strong factual allegations" to support his claim that Morgan provided woefully deficient representation in connection with his plea. (Pet., ECF No. 1, PageID.43.)  But the bulk of these "strong allegations" appeared in an affidavit that contradicted his plea colloquy; the state courts declined to consider the allegations for that reason; and (for all of the reasons explained above) that refusal by the state courts did not contravene clearly established federal law.  Thus, White's allegations do not bring his case within any of the three circumstances identified in *Stermer* under which the Court may hold an evidentiary hearing.

## V

Finally, White claims that he is entitled to habeas relief on the ground that he was denied the effective assistance of appellate counsel because appellate counsel failed to present on appeal the same arguments that White now presents in his petition. (*See id.*, PageID.57.)  The Court disagrees.

In order to prevail on a claim of ineffective assistance of appellant counsel, a petitioner "must show that his appellate counsel was (1) objectively unreasonable in failing to pursue nonfrivolous issues on appeal, and (2) that the failure was prejudicial (*i.e.*, that but for his attorney's mistake, he would have prevailed on appeal)." *Keys v. Booker*, 798 F.3d 442, 456 (6th Cir. 2015).   But because the state trial court rejected White's ineffective assistance claim on the merits (*see* St. Ct. Op.

and Order, ECF No. 1-11, PageID.770-773), White must make an additional showing.  He must show that it was unreasonable for the trial court to have rejected the claim. *See Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013).

White has not made the required showings.  First, he does not provide an analysis of the state court's rejection of his ineffective assistance of appellate counsel claim.  Instead, he asserts that "[t]he determination of the state trial court on postconviction review [rejecting the claim of ineffective assistance of counsel] unreasonably applies clear United States Supreme Court precedent…." (Pet., ECF No. 1, PageID.58.)  That is not enough.

Second, White has not shown a reasonable probability that the result of his direct appeal would have been different if appellate counsel had made the arguments presented in his habeas petition.  As explained in detail above, the Michigan Court of Appeals rejected White's ineffective assistance claims and declined to order an evidentiary hearing because White's claims relied upon statements in his affidavit that contradicted his plea colloquy.  The arguments (from the petition) that White says his appellate counsel should have made would not have changed the appellate court's ruling because those arguments do not address the impact of the conflict between his affidavit and his plea colloquy.  Since the omitted arguments do not relate to the basis on which the appellate court ruled against White, there is not a

reasonable probability that those arguments would have changed the result of the appeal if they had been presented by appellate counsel.

## VII

White may not appeal the Court's decision unless the Court issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That standard is met when "reasonable jurists could debate whether ... the petition should have been resolved in a different manner." *Welch v. United States*, 136 S. Ct. 1257, 1263 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, reasonable jurists could debate the Court's conclusion that White is not entitled to the relief he seeks. Thus, the Court will issue White a certificate of appealability.

## VIII

For all of the reasons explained above, **IT IS HEREBY ORDERED** that:

- White's petition for a writ of habeas corpus (ECF No. 1) is **DENIED**; and

- White is **GRANTED** a Certificate of Appealability with respect to the Court's denial of his petition.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 3, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 3, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764